**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **PEGGY NESTOR,** | : | **Case No. 23-10627 (MEW)** |
| | : | |
| **Debtor.** | : | |
| | : | |
| **MARIANNE NESTOR,** | : | |
| | : | |
| **Plaintiff,** | : | |
| v. | : | **Adv. Pro. No. 26-01030 (MEW)** |
| | : | |
| **ALBERT TOGUT, NEIL BERGER, MARTHA MARTIR, JONATHAN COHEN, and ROLAND NY,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |
| **MARIANNE NESTOR,** | : | |
| | : | |
| **Plaintiff,** | : | |
| v. | : | **Adv. Pro. No. 26-01031 (MEW)** |
| | : | |
| **ALBERT TOGUT, and NEIL BERGER,** | : | |
| | : | |
| **Defendants.** | : | |

**DECISION (1) PERMITTING THE PLAN ADMINISTRATOR TO INTERVENE IN TWO ADVERSARY PROCEEDINGS THAT HAVE BEEN REMOVED FROM STATE COURT, (2) DISMISSING THE TWO REMOVED ADVERSARY PROCEEDINGS, WITH PREJUDICE, AND (3) ENFORCING THIS COURT'S PRIOR INJUNCTION AND REQUIRING MARIANNE NESTOR CASSINI TO PAY THE FEES AND COSTS INCURRED BY THE PLAN ADMINISTRATOR IN REMOVING THE ACTIONS AND PREPARING AND PROSECUTING THE MOTIONS TO DISMISS THEM**

Albert Togut, Esq. served as the trustee in the chapter 11 case of Peggy Nestor beginning in March 2024. He became the Plan Administrator in April 2026 when a plan of reorganization was confirmed. ECF No. 987. Mr. Togut, and various attorneys who worked for him, have been

sued by Marianne Nestor Cassini in two separate adversary proceedings that were filed in the

New York State courts in February and March 2026.  The two cases were removed to the United

States District Court for the Southern District of New York and they have since been referred to

this Court, where they are pending as adversary proceedings 26-01030 and 26-01031.

The Plan Administrator has filed a motion seeking permission to intervene in the two

removed actions and also seeking, among other things, the dismissal of the removed actions,

with prejudice.  The Plan Administrator asserts three separate grounds for dismissal:

(1)     The removed actions represent an impermissible collateral attack, in state court,
        on this Court's prior rulings and orders;

(2)     The removed actions assert claims against a court-supervised fiduciary and his
        professionals for doing things that this Court authorized them to do, without this
        Court's prior approval and therefore in violation of the *Barton* doctrine, *Barton v.
        Barbour*, 104 U.S. 126 (1881); and

(3)     Perhaps most seriously, the two state court actions were filed in violation of an
        injunction that I issued in October 2024, at which time I dismissed an earlier
        effort by Ms. Nestor Cassini to sue the Trustee in state court and explicitly
        enjoined her from pursuing that same tactic in the future.

I held a hearing to consider the Plan Administrator's motion on June 11, 2026.  I agree that the

Plan Administrator has the right to intervene and that the two removed actions should be

dismissed, with prejudice.  The two removed actions constitute impermissible collateral attacks

on the merits of my prior rulings and Orders and violate the *Barton* doctrine.  The filing of the

two actions also violated the explicit terms of the prior injunction that I issued in 2024.  Ms.

2

Nestor Cassini will be ordered, as a result, to reimburse the Plan Administrator for the legal fees and costs that were incurred in obtaining the removal and dismissal of the actions.

**Background**

The lengthy and often tortured history that is relevant here is described below.

**1.      Prior Representations Regarding Property Ownership.**

Peggy Nestor (the "**Debtor**") commenced this case by filing a voluntary chapter 11 petition on April 25, 2023.  She represented in her papers that property located at 15 East 63d street in Manhattan (the "**Townhouse**") was her primary asset.  *See* Declaration of Debtor Pursuant to Local Bankruptcy Rule 1007-2, ECF No. 2, at ¶ 3.[1]  A recorded deed stated that Marianne Nestor Cassini (the Debtor's sister) was a co-owner of the Townhouse, but the Debtor represented that her sister had transferred her interest to the Debtor in 2016 and that the Debtor was the sole owner.  *Id.*  The Debtor also represented under oath that her sister "never resided in the Townhouse" and had not paid the mortgage or related expenses.  *Id.*

Marianne Nestor Cassini is the former wife of Oleg Cassini.  She has been involved in an often heated and long-running estate battle with other heirs of Mr. Cassini that continue to be the subject of proceedings in the Surrogate's Court in Nassau County.  *See* ECF No. 58.  In 2014, the Surrogate's Court removed Marianne Nestor Cassini as executor of Mr. Cassini's estate and appointed the Nassau County Public Administrator as her successor.  *Id.* at ¶ 16.  The Public Administrator and a court-appointed Receiver contend that they have enforceable security interests in the Townhouse by virtue of (a) a judgment against Marianne Nestor Cassini that was

---

[1]   Citations in this Decision to "ECF No. __" are to items on the docket of the main chapter 11 case (Case No. 25-10627).  Citations to the dockets in adversary proceedings are denoted as "Adv. Pro. No. _____, ECF No. ___."  Citations to the dockets in appeals to the District Court are denoted as "SDNY Case No. ___, ECF No. __."

entered in 2015 and renewed in 2025, and (b) a separate attachment order issued by the Surrogate's Court in 2020 (affirmed in 2021) that secures a potential judgment in another lawsuit and that covers up to $2,594,813.42 in value of the Debtor's interests and up to $57 million of any interests that Marianne Nestor Cassini holds in the Townhouse. *Id.* at ¶¶ 25, 29.

Two financial institutions also held mortgage liens. Emigrant Bank (as successor to Emigrant Savings Bank-Manhattan) asserted a claim in the amount of $3,559,407.76 that was secured by a mortgage lien on the Townhouse. *See* Claims Register, Item 5-1. Lynx Asset Services, LLC" (**Lynx**") held a mortgage lien that was granted by the Debtor and Ms. Nestor Cassini in support of their personal guarantees of a loan that was made to an entity named Gemeaux Ltd. in 2017. *See* ECF No. 47. The New York State Court entered a foreclosure judgment in favor of Lynx and against the Debtor and Ms. Nestor Cassini on October 12, 2022. ECF 48-8, Exhibit H. An imminent foreclosure sale, pursuant to that judgment, prompted the Debtor's bankruptcy filing in April 2023. ECF No. 2, ¶¶ 8, 12.

Throughout the early months of this case the Debtor and her counsel represented in many separate filings, including in statements made under oath, that the Debtor was the sole owner of the Townhouse. Those many filings are described in more detail in a separate decision that this Court entered on March 12, 2026 (the "**March 12 Decision**"). *See* ECF No. 980, at 3-6. After efforts to arrange a refinancing were unsuccessful, the Debtor filed a motion seeking approval of procedures that would govern a sale of the Townhouse. The parties recognized, however, that efforts to sell the Townhouse could be adversely affected if there were uncertainties as to who owned the property and as to whether Marianne Nestor Cassini agreed that the property could be sold. There would have been no such uncertainties if Lynx had instead been permitted to

4

proceed with its state court foreclosure sale, since the underlying foreclosure judgment had been entered against both the Debtor and Marianne Nestor Cassini.

The Debtor chose to address and to clarify the ownership and sale issues by commencing an adversary proceeding on November 1, 2024 against Marianne Nestor Cassini, the Public Administrator and the Receiver, seeking a declaration that the Townhouse belonged only to Peggy Nestor and that Marianne Nestor Cassini had no ownership interest in it. *Nestor v. Nestor, et. al.*, Adv. Proc. No. 23-01195 (MEW). In the alternative, the Debtor asked for an Order declaring that the Townhouse should be sold pursuant to Section 363(h) of the Bankruptcy Code, which permits the sale of property that is jointly owned by a debtor and another person so long as certain conditions are satisfied. *See* 11 U.S.C. § 363(h).

The parties agreed in late 2023 on the procedures that would govern the sale of the Townhouse, and they agreed that Sotheby's would be retained as a broker. Marianne Nestor Cassini signed the engagement letter with Sotheby's, but she added a handwritten note stating "all rights reserved nothing herein is an admission of any ownership interest. Peggy Nestor is the owner of 15 E. 63rd Street." ECF No. 80.

The Public Administrator and the Receiver filed answers in the adversary proceeding that the Debtor had filed, reserving their rights to claim that the Townhouse belongs, in whole or in part, to Marianne Nestor Cassini. Adv. Pro. No. 23-01195, ECF Nos. 7 & 8. Marianne Nestor Cassini did not oppose the relief sought in the Complaint and did not dispute its allegations regarding ownership of the Townhouse. Instead, on January 31, 2024, she filed an admission of service of the Summons and Complaint, and confirmed in that filing that "I have no ownership interest in the premises at 15 East 63th [*sic*] Street, New York. NY. 10065. Peggy Nestor is the Sole Owner of 15 East 63rd Street." *See* Adv. Pro. No. 23-01195, ECF No. 10, at ¶ 8.

Thereafter, Peggy Nestor asked for the entry of judgment against Marianne Nestor Cassini in the pending adversary proceeding. Adv. Pro. No. 23-01195, ECF No. 11. Ms. Nestor Cassini did not oppose the entry of judgment. The Receiver and the Public Administrator agreed that judgment should be entered directing a sale of the Townhouse pursuant to section 363(h) of the Bankruptcy Code, with the understanding that the creditors' issues as to whether Marianne Nestor Cassini owns an interest in the Townhouse would be resolved in connection with the allocation of the proceeds of a sale. Adv. Pro. No. 23-01195, ECF Nos. 13, 14. I therefore entered an Order granting a partial judgment against Ms. Nestor Cassini on March 13, 2024, confirming that the Townhouse would be sold pursuant to the sale procedures previously approved by the Court. Adv. Pro. No. 23-01195, ECF No. 18. No appeal from that Order was filed.

In early 2024, Lynx identified various instances in which the Debtor had apparently received and disposed of large sums of money without court approval. Lynx also was unhappy with the speed and the manner in which the sale process was proceeding. Lynx filed a motion seeking the appointment of a chapter 11 trustee, and the Court held a hearing on that motion on March 5, 2024. Marianne Nestor Cassini appeared at the hearing, and she also filed papers shortly before the hearing stating her belief that a trustee should not be appointed. In her filing, Ms. Nestor Cassini stated that "Oleg Cassini, my husband since 1971, has had no Ownership Interest in the town house at 15 East 63rd Street NYC 10065. It is the residence and sole property of Peggy Nestor." ECF No. 104, at ¶ 38. Ms. Nestor Cassini also stated that "15 East 63rd Street, has been Peggy's Home and Primary Residence for 40 years. I have never resided there. The building is 100% owned by Peggy since 2018, by Deed." *Id*. at ¶ 64.

**2.      The Trustee Appointment and the Nestors' Change in Position.**

I determined that the appointment of a Trustee was warranted for the reasons stated in a Decision dated March 13, 2024.  ECF No. 106.  Albert Togut Esq. was appointed as the Chapter 11 trustee on March 22, 2024.  ECF Nos. 111, 112.  The Trustee was entitled to take control of property of the Debtor's estate.  However, the Debtor (and whoever else was then residing at the Townhouse) did not cooperate in making the Townhouse available to the Trustee.

The Trustee filed an adversary proceeding on April 10, 2024, stating that his access to the property had been denied.  *See* Compl., Adv. Pro. No. 24-01342, ECF No. 1.  The Trustee alleged that he had been advised that Peggy Nestor resided in Connecticut and that Marianne Nestor Cassini did not reside at the Townhouse.  The Trustee's complaint also attached, as an exhibit, a copy of a signed and notarized deed, dated January 25, 2018, by which Marianne Nestor Cassini had purported to transfer all of her interest in the Townhouse to Peggy Nestor. *See* Adv. Pro. No. 24-01342, ECF No. 2, Ex. E.

I issued an order directing Peggy Nestor and Marianne Nestor Cassini to show cause as to why I should not direct them to surrender and turn over possession of the Townhouse to the Trustee.  *See* Adv. Pro. No. 24-01342, ECF No. 3.  They failed to respond, and so I entered another Order on April 23, 2024 that directed them to turn over keys to the property.  *Id.*, ECF No. 8; March 12 Decision at 8-10.  My April 23, 2024 Order stated that if the Debtor and others did not comply with the turnover order then the Trustee could enlist the aid of the U.S. Marshals in obtaining possession of the Townhouse and in removing any persons found there.  *Id*.

The Debtor and her sister did not turn over keys as I had directed them to do.  In addition, when the Trustee attempted to get access to the Townhouse on April 26, 2024, access was refused by the persons who were then in the house.  On April 29, 2024, with the assistance of the

7

Marshals, the Trustee finally gained access to the Townhouse.  At that time the Marshals evicted Peggy Nestor, Marianne Nestor Cassini and their niece from the premises.  ECF No. 135.

Subsequently, at a conference on May 1, 2024, Marianne Nestor Cassini contended, for the first time, that she actually was still a one-half owner of the Townhouse, that the Townhouse was her residence and that the Trustee should not be permitted to take possession of her property. Transcript, May 1, 2024 (ECF No. 166), at 40:1-44:6.  As explained in more detail in the March 12 Decision, the prior statements by the Debtor and Ms. Nestor Cassini (to the effect that Peggy Nestor was the sole owner) had been important elements in my prior denials of stay relief to Lynx and to the Public Administrator, and in my approval of a bankruptcy sale process in lieu of the completion of a state court foreclosure sale.  *See* March 12 Decision at 5, 10.  I held that Ms. Nestor Cassini was estopped from taking a different position in light of the explicit prior representations she had filed with the Court and in light of the parties' and the Court's reliance on those representations.  *Id.* at 45:10-46:15, 78:16-79:3.  I confirmed that ruling in a written decision that I entered following another conference held on May 8, 2024, and in my subsequent denial of four separate motions for reconsideration.  ECF Nos. 153, 156, 160, 162, 185.

Ms. Nestor Cassini filed an appeal from the denial of her fourth motion for reconsideration.  Her appeal was denied in March 2026.  *See* SDNY Case No. 24-cv-04063, ECF No. 45.  Ms. Nestor Cassini has filed a further appeal to the United States Court of Appeals for the Second Circuit.

**3.      The Court's October 2024 Injunction.**

On August 6, 2024, Marianne Nestor filed an action in the Civil Court of the City of New York against the Trustee's counsel of record, Neil Matthew Berger of the firm of Togut Segal & Segal.  The verified petition asserted that Marianne Nestor was a lawful occupant of the

8

Townhouse and that Mr. Berger had improperly and unlawfully withheld possession of the Townhouse from her.  She asked that she be awarded possession of the Townhouse and sought treble damages under section 853 of the Real Property Actions and Proceedings Law.  Her petition made no reference to the prior orders that this Court had issued or to the prior rulings that this Court had made.  Mr. Togut, acting as Trustee, caused the action to be removed to this Court, and I will refer to it as the First Removed Action.  *See* Adv. Pro. No. 24-04021.

Notwithstanding the removal of the First Removed Action, Marianne Nestor appeared before the Civil Court on August 19, 2024 to press her claims.  She also continued to assert, in this Court, that she had a right to proceed with her action in the Civil Court.

On October 2, 2024, I held a hearing at which (among other matters) I considered the Trustee's motion for permission to intervene in the First Removed Action and for dismissal of the First Removed Action with prejudice.  I explained to Ms. Nestor, at that hearing, that the state court litigation was improper because (a) it asked the state court to review and to rule upon the merits of my prior rulings regarding the Trustee's right to possess the Townhouse and the removal of Ms. Nestor from the Townhouse, and thereby represented an impermissible collateral attack on my orders and decisions, and (b) it sought to sue the Trustee (a fiduciary acting under my supervision) and the Trustee's retained professionals for doing things that I had authorized them to do, which is not permitted under the *Barton* doctrine.  *See* Transcript, October 2, 2024 (Adv. Pro. No. 24-04021, ECF No. 16), at 39:17-42:4.  I also warned her that if she tried similar things in the future I would hold her in contempt:

> For all of those reasons, I am dismissing your case with prejudice.  Do not file another case in state court.  Do not do it.  I will hold you in contempt if you do.  If you think my rulings are wrong, your recourse is to the Appellate Court, the United States District Court.  You cannot ignore my rulings and substitute your own sense of how the law should work by going to the state court and asking them to undo what I have done.

9

*Id.* at 42:5-12.  The Trustee had also contended that Ms. Nestor was a vexatious litigant.  He asked that I enjoin future pleadings or legal actions by Ms. Nestor (not only in other courts, but also in this Court) except to the extent she obtained my prior permission, and that Ms. Nestor be required to include a copy of the proposed order with any future appeal she elected to file.  I stated that I would enjoin future filings on other courts that sought damages from the Trustee and his representatives, but that I would not otherwise impose limits on Ms. Nestor's filings in this Court or on appeal, notwithstanding her demonstrated tendency to make repeated requests for relief that the Court had previously denied.  I explained as follows:

> I also had a request that I enjoin further filings.  You may include in the order a limited injunction against Ms. Nestor Cassini filing suits elsewhere that seek to – seek damages or other relief against the trustee and his representatives unless I have authorized such suit or that asks another court other than an Appellate Court to issue orders contrary to the orders that I have issued.

> But that's the only thing that I'll enjoin.  I will not limit the number of papers she files in this Court.  You may have to read a lot.  I have to read a lot.  But I don't think that would be appropriate.  There may be a lot of repetitive filings.  I don't think that's enough to make them vexatious.

*Id.* at 49:6-18.

On October 25, 2024, I issued an Order (the "**October 2024 Dismissal and Injunction**") in which I dismissed the First Removed Action.  *See* Adv. Pro. No. 24-04021, ECF No. 15.  I noted that the First Removed Action constituted an impermissible collateral attack on the orders I had entered.  *Maggio v. Zeitz*, 333 U.S. 56, 68 (1948); *H&C Dev. Grp., Inc. v. First Vermont Bank & Tr. Co.*, 280 A.D.2d 643, 644 (N.Y. App. Div. 2001).  I further explained that the First Removed Action sought to obtain damages from the Trustee's counsel for having done what I expressly authorized and directed the Trustee and his counsel to do.  The Trustee and his attorneys are fiduciaries who act under this Court's supervision, and they cannot properly be

sued for his actions without this Court's permission. *Barton v. Barbour*, 104 U.S. 126 (1881); *In re Ditech Holding Corp.*, 2012 WL 3716398, at *10 (Bankr. S.D.N.Y. Aug. 20, 2021). I also determined that injunctive relief was necessary to prevent Marianne Nestor from continuing to attempt to pursue litigation in other courts that effectively seek to challenge this Court's orders or to punish the estate fiduciaries who are acting under this Court's supervision. The language of the injunction was as follows:

> Pursuant to Section 105(a) of the Bankruptcy Code and the inherent powers of this Court, Marianne Nestor is enjoined from commencing or continuing any actions against the Trustee, or any attorneys or other professionals or their personnel acting on the Trustee's behalf, in any Court other than this Court, except to the extent she obtains this Court's prior permission to do so. For the avoidance of doubt, nothing in this paragraph limits Ms. Nestor's rights to file or to prosecute her pending or future appeals from this Court's orders,or requires any approval by this Court with respect to her filings in courts that have proper appellate jurisdiction over this Court.

*See* October 2024 Dismissal and Injunction, ¶ 5.

**4.    Disputes Over Personal Property.**

The sale of the Townhouse was the primary task to be completed in this bankruptcy case. However, the Townhouse was filled with many items of personal property, ranging from antique furniture to clothing to scores of cardboard boxes. At one time, the Trustee sought to obtain a judgment declaring that the Debtor owned all of the personal property. *See* Adv. Pro. No. 25-01037, ECF No. 1. On April 7, 2025, however, the Trustee instead filed a motion seeking permission to abandon any interest that the estate might have in virtually all of the personal property located in the Townhouse. *See* ECF No. 560. The motion asked me to approve procedures by which the Trustee would give notice to Ms. Nestor Cassini and the Debtor of the items that could be removed and of a deadline by which to complete the removal, and asked me to rule that any personal property that was not removed during the specified removal period

11

would be deemed to have been abandoned to the estate and subject to any disposition by the Trustee that he deemed appropriate. *Id*.

No objections to the Trustee's motion were filed. The Court held a hearing on the motion on May 8, 2024, and then entered an Order on May 13, 2024 that granted the motion and set forth the procedures that would be followed. *See* ECF No. 613. The Order authorized the Trustee to serve notice of the property in which he was abandoning any interest of the estate and to notify the person(s) who wished to retrieve such property of their opportunity to do so. The Trustee was authorized to designate a "Removal Period" during which such removal would be permitted, and the Order provided that any property not removed during the Removal Period "shall be deemed abandoned to the Estate, subject to any disposition by the Trustee, to be determined in his business judgment." *Id*. at ¶ 3(e).

No appeal was filed from the May 13, 2024 Order.

On July 14, 2025, the Trustee issued the first notice of abandonment of personal property. *See* ECF No. 691. Ms. Nestor Cassini asked that I modify the amount of time that would be permitted for the property removal, and I held a hearing to consider that application on July 25, 2025. *See* Tr., July 25, 2025, ECF No. 741. The Trustee had originally scheduled a removal deadline of July 28, 2025, but Ms. Nestor Cassini asked that it be extended to a date in August. *Id*. at 12:14-13:6. I ruled that the amount of time provided in the Trustee's notice was too short given the volume of the items to be removed, and I extended the deadline to August 18, 2025. *Id*. at 17:17-18:3. I reminded Ms. Nestor Cassini and the Debtor that "If you don't move it, you've abandoned your interest." *Id*. at 18:1-3. I entered an Order that confirmed these rulings on July 29, 2025. *See* Adv. Pro. No. 25-01037, ECF No. 58.

12

On July 31, 2025, the Trustee served a second notice of abandonment. (ECF No. 725.) That notice set forth the same August 18, 2025 removal deadline to which the first notice was subject. *Id*.

Ms. Nestor Cassini contended that some items of personal property had been damaged by a water leak that occurred in early August, and she asked that those items be allowed to remain at the Townhouse until they could be examined by insurance adjusters. I entered an Order on August 19, 2025 that permitted those items to remain in the Townhouse so that such an inspection could be completed, but that also confirmed the August 18, 2025 removal deadline for all other items. *See* Adv. Pro. No. 25-01037, ECF No. 70. I asked for an update during a subsequent hearing on August 26, 2025, at which time the Trustee reported that some items had been removed from the Townhouse but many other items remained. *See* Tr., August 26, 2025, ECF No. 762, at 6:19-8:22. I noted that the deadline for removal had passed and that under the approved procedures the Debtor and her sister had abandoned any interest in the property that had been left behind, but I also noted that the Townhouse had not yet been sold, and I asked the Trustee to give the sisters a further chance to remove the items before they were thrown away. *Id*. at 9:17-25, 11:5-22, 12:4-10.

On October 14, 2025, the Trustee served a third notice of abandonment. *See* ECF No. 792. Periodically, during the many hearings that have been held in this case, I reminded the Debtor and Ms. Nestor Cassini of the need to remove their items from the Townhouse and of the prior orders that had been entered.

On January 22, 2026, this Court held a hearing to consider the Trustee's request for approval of a schedule to consider a proposed plan of liquidation. *See* Tr., January 22, 2026, ECF No. 878. The Trustee had previously identified a proposed buyer for the Townhouse, and

13

the proposed plan contemplated the completion of that sale in mid-March of 2026.  During the hearing, I noted that the Trustee had stated his intention to remove any remaining personal property from the Townhouse prior to the sale date, and I asked what items remained and what the Trustee planned to do with them.  *Id*. at 13:22-25.  The Trustee's counsel stated that the Trustee intended to file a notice for the removal of personal property that remained and then to dispose of anything that was not removed.  *Id*. at 14:12-19.  Ms. Nestor Cassini was present at the hearing and asked questions about personal property that allegedly had been subject to water damage.  *Id*. at 15:11-22.  She complained about the volume of the items that had not yet been removed, but I noted that "with the exception of some staging furniture, the personal property has been there for removal for what, seven months now?  You've had – you know, not only did we give you opportunities, not only did we give you deadlines, essentially, I didn't enforce the deadlines to the extent that it's not going to interfere with anything else.  If there's something there that you want, you better make arrangements very quickly to get it, because I'm not going to make them hang on to it forever."  *Id* at 16:21-17:4.

On February 6, 2026, the Trustee filed a motion to amend my prior Order that had exempted certain water-damaged property from the abandonment process.  *See* ECF No. 879.  I held a hearing on that motion on February 19, 2026, and Ms. Nestor Cassini participated in that hearing.  *See* Tr., February 19, 2026, ECF No. 919.  I asked again what the Trustee planned to do with any items that were not retrieved, and the Trustee's counsel responded that the Trustee intended to discard them.  *Id*. at 5:25.  Counsel explained further that the Trustee had arranged "with a servicer to come and take all the items, remove them, and leave the house in a broom - like condition."  *Id*. at 5:25-6:2.  I noted that the relevant water leak had occurred more than six months earlier and that there had been plenty of time to assess any damage to personal property,

14

so that there should be no further need to exempt those items from the abandonment process. *Id.* at 6:5-9. Ms. Nestor Cassini asked for the opportunity to have her expert examine the property, and I directed the Trustee to cooperate with that effort. I also asked whether Ms. Nestor Cassini had made the necessary arrangements to move other items out of the Townhouse (*id.* at 10:3-16), though she declined to give a straightforward answer and instead just argued that she should not have to move anything. At the conclusion of the hearing, I explained that Ms. Nestor Cassini's experts would be allowed to examine the allegedly damaged property but that doing so "will not delay the time when all this stuff needs to be moved out of the house. You need to make arrangements with moving companies to get it out of there. Or as I said, many, many months ago, it will be deemed abandoned. I'm not going to just continue to let you postpone what needs to happen with this property." *Id.* at 14:13-18.

I issued an Order on February 19, 2026 that modified my prior order and that eliminated the exemption of the water-damaged items from the abandonment process. *See* ECF No. 894. The Trustee filed a further notice of abandonment that same day and specified a retrieval date of March 2, 2026. *See* ECF No. 895. The notice stated clearly that "THIS WILL BE THE DEFENDANTS' FINAL OPPORTUNITY TO RETRIEVE THE ABANDONED PERSONAL PROPERTY." *Id.*

Notwithstanding the many warnings and admonitions, the Debtor and Ms. Nestor Cassini did not remove their remaining personal property. As described below, and as they had been warned, the remaining personal property was removed in connection with the approved sale of the Townhouse.

15

5. **Disputes Over Fixtures.**

The Trustee contended that certain items in the Townhouse were not personal property but instead were "fixtures" that were part of the real property under New York law. The parties' disputes over those issues led to a trial on June 26, 2025 in adversary proceeding no. 25-01037. I issued a decision on August 13, 2025 in which I reviewed and discussed each of the relevant items (including exterior and interior doors, flooring, wooden paneling, marble facings, bronze side wall units, window brackets, railings, mouldings, corbels and fireplace mantels) were fixtures under New York law, with the exception of a freestanding fireplace that was located in an area described as a butler's pantry. *See* Adv. Pro. No. 25-01037, ECF No. 64. I entered a judgment to that effect on that same day. *Id.*, ECF No. 65.

Marianne Nestor Cassini filed an appeal from the fixtures judgment. *Id.*, ECF No. 75. I denied her request for a stay pending appeal. *Id.*, ECF No. 76. The District Court denied the appeal and affirmed this Court's judgment on March 26, 2026. *See Nestor v. Togut (In re Nestor)*, No. 25-CV-7217 (JMF), 2026 U.S. Dist. LEXIS 65020 (Mar. 26, 2026). Ms. Nestor Cassini has filed a further appeal of the fixtures judgment to the Second Circuit Court of Appeals.

6. **Sale Approval and Plan Confirmation.**

On January 10, 2026, the Trustee filed a motion seeking (among other things) the tentative approval of a sale of the Townhouse to 63rd St. Townhouse LLC (the "**Buyer**"). *See* ECF No. 823. The motion disclosed that the Trustee had reached an agreement to sell the Townhouse to the Buyer at a price of $34.5 million. I issued an Order on January 12, 2026 (ECF No. 826) that scheduled the Trustee's motion for hearing on January 22, 2026. After that hearing, I entered an Order on January 27, 2026 (ECF No. 851) that approved the designation of

16

the Buyer as the so-called "Stalking Horse Bidder." The Order provided that an additional period would be allowed for the submission of competing bids, that an auction would be held if further bids were submitted, and that a hearing to consider the proposed sale would be held on February 25, 2026. *Id.*

On February 3, 2026, this Court held a hearing on the Trustee's separate motion to set a schedule to consider the approval of a Disclosure Statement and the confirmation of a proposed plan of reorganization. I noted at the hearing that the Plan provided that Marianne Nestor Cassini would continue to be estopped from claiming ownership interests in the Townhouse, and I noted that I had already ruled on that issue a number of times. *See* Tr., February 3, 2026, ECF No. 892, at 13:9-13. I entered an Order on February 4, 2026 (ECF No. 875) that set a schedule for the service of the Disclosure Statement, the conduct of a confirmation hearing, and related matters.

The Debtor and Ms. Nestor Cassini appeared at the sale hearing on February 25, 2026. No higher bids had been submitted, and the Court heard testimony by Mr. Hassoumi (the real estate broker), Mr. Togut (the chapter 11 trustee), Ms. Nestor Cassini and the Debtor. During the hearing, the Debtor and Ms. Nestor Cassini asserted that they wished to refinance and/or to purchase the Townhouse, though they had made no formal offer to do so. Ms. Nestor Cassini also asserted that she purportedly had a co-owner's right, under section 363(i) of the Bankruptcy Code, to buy the Townhouse at a price equal to the price offered by the highest bidder. I reminded her that I had previously ruled many times that she is estopped from claiming that she is a co-owner of the Townhouse and that as a result she does not have rights under section 363(i). *See* Tr., February 25, 2026, ECF No. 942, at 12:7-17, 92:14-18. After the conclusion of the

17

hearing the Court issued an Order that approved the sale of the Townhouse to the Buyer, conditioned upon the confirmation of a plan of reorganization.  ECF No. 920.

Ms. Nestor Cassini did not file an appeal from the order that approved the sale of the Townhouse.

A few days after the sale hearing, on the evening of February 28, 2026, Ms. Nestor Cassini and the Debtor appeared uninvited at the home of a back-up bidder in an effort to discourage him from participating in the sale process.  During their visit (captured on video tapes) they misrepresented the finality of what I had previously ordered and asserted that the property was not for sale.  *See* Adv. Pro. No. 24-01342, ECF Nos. 59, 64.  The Trustee sought the entry of an order prohibiting the Nestors from contacting potential purchasers or otherwise interfering with the sale, and the Court held hearings on March 3, 2026 and March 5, 2026.  The Nestors appeared at the March 5 hearing, and Ms. Nestor Cassini contended once again that she should be allowed to buy the property.  I repeated multiple times that I had previously ruled that Ms. Nestor Cassini is estopped from claiming that she is a co-owner of the Townhouse and that she is estopped from claiming rights under section 363(i) of the Bankruptcy Code.  I also stated that even if she had rights under section 363(i) she would be required to pay the full amount that the Buyer had agreed to pay and would be required to do so on or before the scheduled closing with the Buyer, but that she had never offered to do so and had never shown that she had the financial ability (through her own resources or with committed financing) to do so.  I stated that she had no rights to buy the Townhouse, but that if she thought she had the financial wherewithal to do so she should speak to the Trustee or his representatives in the first instance so that the Trustee and the secured creditors could decide if they wished to consider that option and how they wished to proceed.

During the hearing on March 5, 2026, Ms. Nestor Cassini repeatedly attempted to characterize my comments as a ruling that she had the right to buy the Townhouse.  I corrected her a number of times, and emphasized several times that she is estopped from claiming such rights.  *See* Tr., March 5, 2026, ECF No. 977, at 11:7-12:2, 15:22-16:2, 24:7-18, 34:20-35:21 and 37:9-23.

Subsequently, Ms. Nestor Cassini has made numerous requests that I confirm her alleged "right" to buy the Townhouse.  We have denied each of those requests and have further repeated the rulings that we previously made on these points.  *See*  ECF Nos. 927, 957, and 961.

On March 12, 2026, I entered an Order that confirmed the Trustee's proposed plan of reorganization.  *See Findings of Fact and Conclusions of Law and Order (I) Approving Disclosure Statement on a Final Basis, and (II) Confirming Chapter 11 Trustee's Plan* ( the "**Confirmation Order**"), ECF No. 978.  The Plan provided that a sale would be concluded in accordance with the terms of the prior Sale Order.  The confirmed Plan also provided that the injunction that I had issued in October 2024 (which had been defined in the Plan as the "Removal Order") would remain in effect:

> All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan, the Approval Order, the Removal Order or the Confirmation Order), shall remain in full force and effect until the Closing of the Chapter 11 Case. All injunctions or stays contained in the Plan, the Approval Order, the Removal Order or the Confirmation Order shall remain in full force and effect in accordance with their terms.

Confirmation Order, Ex. A, Art. 1.9 & 13.7.  Paragraph 4(b) of the Confirmation Order directed the Debtor and Marianne Nestor "not to take any actions inconsistent with the Plan [and] the Sale Order."  *Id*., ¶ 4(b).

The Confirmation Order also provided that this Court would retain jurisdiction over any and all matters relating to the Chapter 11 case and the sale of the Townhouse:

> Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the Chapter 11 Case, the plan of reorganization (the "Plan"), the sale of the Townhouse, the Sale Order, and the implementation of this order, including, without limitation, those matters set forth in Article XII of the Plan and all Retained Causes of Action.

Confirmation Order at ¶ 16.

Ms. Nestor Cassini did not file an appeal from the confirmation order.

The sale of the Townhouse required a delivery of the property in broom-clean condition, and therefore required that any remaining items of personal property be removed. As I had previously authorized, and as the Debtor and Ms. Nestor Cassini had been repeatedly warned, the Trustee arranged for the remaining personal property in the Townhouse to be removed for disposition by Roland Antiques. The closing of the sale of the Townhouse then occurred.

7. **The Second and Third Removed Actions.**

On February 17, 2026, Marianne Nestor filed an action in the Supreme Court of the State of New York New York State courts, naming Albert Togut and Neil Berger (a partner in the Trustee's law firm) as defendants. Her complaint alleged that she had been illegally evicted from the Townhouse and that the defendants were guilty of trespass. She asked that the state court award her millions of dollars in compensatory and punitive damages. She also asked for an injunction barring the defendants from exercising control over the Townhouse and requiring them to surrender the property to her. Her complaint made no mention of this Court's prior orders or the fact that the Trustee's possession and sale of the Townhouse, and the eviction of Ms. Nestor Cassini from it, had been explicitly authorized by this Court. The action has been

20

removed to this Court and is now pending as adversary proceeding no. 26-01031. I will refer to it as the "Second Removed Action."

On March 26, 2026, Ms. Nestor Cassini filed another action in the Supreme Court of the State of New York. The named defendants are the Trustee, three attorneys with the Trustee's law firm (Neil Berger, Martha Martir and Jonathan Cohen), and Roland Antiques. Her complaint alleges that Roland Antiques wrongfully removed her personal property from the Townhouse and that her personal property should be returned to her. Once again, the complaint made no reference to the many orders that this Court had issued, in particular to the Order stating that personal property that was not removed by the applicable deadlines would be deemed to have been abandoned by the Debtor and Ms. Nestor Cassini. As noted above, Ms. Nestor Cassini did not object to the entry of that order and never filed an appeal from it. This action was removed and then referred to this Court and is now pending as adversary proceeding 26-01030. I will refer to it as the "Third Removed Action."

### Discussion

The Plan Administrator is responsible for the enforcement of the orders previously entered by this Court and the defense of the transactions that I approved and that the confirmed plan of reorganization contemplated. I agree that he has a right to intervene for the reasons stated in his papers, and I note that no opposition to that intervention has been filed.

The claims in the Second and Third Removed Actions, like the claims asserted in the First Removed Action, ask the New York State court to review the propriety of actions that I expressly authorized and directed the Trustee to take. They constitute an impermissible collateral attack on the orders I entered and the rulings that I made. *Maggio v. Zeitz*, 333 U.S. 56, 68 (1948); *H&C Dev. Grp., Inc. v. First Vermont Bank & Tr. Co.*, 280 A.D.2d 643, 644 (N.Y. App.

21

Div. 2001). Ms. Nestor's recourse, if she believes my Orders were imprudent, was to file timely appeals from them, not to ask a state court to reconsider their propriety.

The Second Removed Action and the Third Removed Action also sought to obtain damages from the Trustee and the Trustee's attorneys and other representatives for having done what I expressly authorized and directed them to do. The Trustee and the persons acting under his direction are fiduciaries under this Court's supervision and who cannot properly be sued for his actions without this Court's permission. *Barton v. Barbour*, 104 U.S. 126 (1881); *In re Ditech Holding Corp.*, 2012 WL 3716398, at *10 (Bankr. S.D.N.Y. Aug. 20, 2021).

Of far greater concern, to me, is that Ms. Nestor Cassini acknowledged at a hearing on June 11, 2026 that she was aware that I had previously enjoined her from filings suits of this kind in the New York State courts. She did not contend that the new lawsuits were not covered by the injunction. Her sole response was that she does not acknowledge my jurisdiction over her. The October 2024 Dismissal and Injunction, however, were entered in a lawsuit in which Ms. Nestor Cassini was the plaintiff and that had been removed to this Court. I plainly had jurisdiction over her in that case, and as noted above she filed no appeal from the injunction that I entered.

Ms. Nestor Cassini's conduct represents a deliberate defiance of this Court's authority and its prior orders. Her defiance has forced the Plan Administrator, without any justification, to incur the expense of removing the Second Removed Action and the Third Removed Action and of seeking the dismissal of those actions. I will therefore issue an order that permits the Plan Administrator to intervene, that dismisses the Second and Third Removed Actions with prejudice, that reconfirms my prior injunction and that directs Ms. Nestor Cassini to compensate the Plan Administrator for the fees and expenses incurred in seeking the removal and dismissal of the Second and Third Removed Actions.

22

**Conclusion**

For the foregoing reasons, this Court will issue an Order (i) granting the Plan Administrator's motion to intervene in the Second Removed Action and the Third Removed Action, (ii) dismissing the Second Removed Action and the Third Removed Action, with prejudice; (iii) reconfirming the Court's October 2024 Dismissal and Injunction, and (iv) giving the Plan Administrator to right to recover, from Ms. Nestor Cassini, the fees and costs incurred in connection with the removal and dismissal of the Second Removed Action and the Third Removed Action, and specifying the procedures to be followed in connection with an application to recover such fees and costs.

DATED: New York, New York
       June 15, 2026

/s/ **Michael E. Wiles**
Honorable Michael E. Wiles
United States Bankruptcy Judge